### SWICK v. HARTMAN.

1. DEEDS—UNDUE INFLUENCE—OPPORTUNITY ALONE INSUFFICIENT TO ESTABLISH ITS EXERCISE.

Evidence of opportunity alone is insufficient to establish the exercise of undue influence in the making of a deed by a mother to her daughter and son-in-law in consideration of a home and support for herself and daughter and two granddaughters.

2. SAME—CONTRACTS—VALIDITY.

In a suit by children of the grantor, after her death, to set aside a deed on the ground of undue influence where the record is convincing that, in the making of the contract whereby grantor deeded her farm to a daughter and son-in-law in consideration of a home and support for herself during her lifetime, and for a widowed daughter and children until the daughter remarried, there was no undue influence used, the contract was not unconscionable but was a favorable one for grantor, who was in need of constant attention, and who expressed no dissatisfaction, and that it has been fully performed by the grantees, the decree of the court below in favor of defendants will be affirmed.

Appeal from Montcalm; Davis (Frank D. M.), J.

Submitted January 5, 1922.   (Docket No. 29.)   Decided March 30, 1922.

Bill by John H. Swick and others against Howard Hartman and another to set aside a deed.   Defendants filed a cross-bill to quiet title.   From a decree for defendants, plaintiffs appeal.   Affirmed.

*Hawley, Eldred & Gemuend,* for plaintiffs.

*Griswold & Cook,* for defendants.

FELLOWS, C. J.   The plaintiffs, five in number, and defendant Delilah E. Hartman are the children of Thomas S. D. Swick and Margaret Swick.   Mr. Swick died in November, 1917, possessed of a farm of 80 acres situated in Richland township, Montcalm county. After his death all the children joined in a quitclaim deed of the farm to the widow.   The following spring Mrs. Swick deeded the farm to plaintiff Lester Swick and his wife, reserving a life use.   While not reduced to writing there is no dispute but that the consideration of this deed was an agreement on Lester's part to care for his mother during the balance of her life, pay her funeral expenses, maintain Mrs. Swick's widowed daughter, who lived with her, and also maintain and educate her two young children.   After this deed was executed a mortgage was given to a bank for $1,000, the proceeds of which were used to build a house for Mrs. Swick to live in, Lester and his family occupying the old home.   Mrs. Swick became dissatisfied with the arrangement with Lester and with the manner in which he was carrying it out and in the late summer filed a bill to have the deed set aside.   An adjustment was arrived at and a settlement made with the assistance of some of the neighbors.   Lester deeded the farm back to his mother, retaining possession of the premises for a time, had

nearly all the crops and was given some personal property. Shortly thereafter the deed in controversy was executed by Margaret Swick to the defendants, husband and wife. It was drawn by the register of deeds of Montcalm county in his office, he and Mrs. Swick alone being present. He had known Mrs. Swick a number of years and testifies that she dictated its terms and conditions. It conveyed the farm in question and included the personal property thereon and contained the following provisions:

"It is hereby agreed by and between the parties hereto that the party of the first part retains unto herself a life estate in the above described premises to the extent that the parties of the second part are to give the party of the first part a home and support her with them during her life and at her death give her a proper burial at their own expense, and also the parties of the second part are to give Dora Fay Cromwell and her two children a home and support and send the children to school until they finish the 8th grade, or until the said Dora Fay Cromwell gets married, in which case this agreement is no longer binding. The parties of the second part are also at the death of the party of the first part to erect, or cause to be erected, for her a suitable monument or marker to cost not less than $80."

Mrs. Swick remained with the Hartmans except for a visit to one of her daughters until their house burned on the night of July 8, 1919. The next morning she was moved to the home of plaintiff Isal Johnson and remained there until her death, eight days later. There is in this record no evidence that Mrs. Swick at any time was dissatisfied with the care and attention given her by the Hartmans, nor is there any evidence that they in any way breached their contract with her. She was around 65 years of age; then was and for a number of years had been afflicted with Bright's disease. Mr. Hartman paid her doctor's bills, the interest on the mortgage and the taxes on the farm.

As the disease progressed and she needed more care he hired a girl to do the housework so that his wife could give her mother the needed attention; after her death he paid the funeral expenses and those of her last sickness, including a bill of $20 rendered by Mrs. Johnson for the eight days her mother was at her house.

The bill seeks to set aside the deed to the Hartmans on the usual grounds of mental incompetency and undue influence.   Defendants in their answer claim the benefits of a cross-bill and ask that their title be quieted.   The trial court dismissed the bill and granted defendants the relief they prayed.   There is no testimony in this record bearing upon the question of mental incompetency that could not be produced in a majority of cases where the grantor had passed middle life.   Plaintiffs have signally failed to make a case of mental incompetency.   Plaintiffs' counsel seem to appreciate this situation but insist that even though the testimony might not justify a decree on this ground, it shows that the grantor, Mrs. Swick, was in such an enfeebled mental condition that she became an easy prey to the undue influence claimed to have been practiced upon her by the defendants.   Counsel insist that we should infer and find that defendants not only exercised undue influence in procuring the deed in question but also by the same means undermined Lester and unduly persuaded Mrs. Swick to break with him and annul their arrangement. Mr. Hartman went with Mrs. Swick to Stanton the day the deed in question was drawn, but the plaintiff Dora Searles also accompanied her although neither was present when the deed was prepared and executed. Mrs. Hartman was not a member of the party.   Mrs. Swick was then living with her daughter Dora on the farm.   There is little or no evidence even of opportunity and opportunity alone is not sufficient to estab-

218 Mich.—14.

lish undue influence. *Severance* v. *Severance,* 90 Mich. 417; *Blackman* v. *Andrews,* 150 Mich. 322; *In re Williams' Estate,* 185 Mich. 97; *Noble* v. *Hunter,* 195 Mich. 713. In the *Severance Case* this court held (quoting from the syllabus):

"Undue influence cannot be predicated upon opportunity alone, nor upon conduct in the line of filial duty, nor upon a disposition of property not in accordance with the statute of descent."

But plaintiffs' counsel insist that the fiduciary relation existed between Mrs. Swick and defendants and that defendants are, therefore, required to establish that their dealings were in all regards conscionable and free from undue influence. Numerous cases are cited from this and other jurisdictions where this question is considered. It is doubtful if the instant case falls within the line of authorities cited. We need not cite or consider the authorities or decide the question. The record is convincing to us as it was to the trial judge that no undue influence was practiced on Mrs. Swick. The contract was in no way unconscionable. It was to all intents and purposes the same contract she orally made with Lester and none of the plaintiffs questioned the contract she made with him. Mrs. Swick was about 65 years old; she was not in robust health, was afflicted with a disease which would no doubt shorten her life; she was in need of care which would increase as the disease progressed. She not only made her care and support a consideration of the deed but also provided for the care and support of her daughter Dora and her two little children, including their education up to and through the eighth grade. While Dora remarried soon after the deed was executed, neither Mrs. Swick nor the Hartmans had any information that she contemplated such step when the contract was made. Some of the interested testimony fixes a value of $60 an acre for the

farm; but it was assessed in 1919 at $2,000, having been raised to that figure after the new house was built. But 10 acres had been stumped and much of it was covered by second growth timber. There was a mortgage on it for $1,000. The contract was a favorable one for Mrs. Swick. Defendants have performed it. The decree was right. It will be affirmed, with costs to defendants.

WIEST, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.